BEFORE THE FIRST DIVISION, APRIL 28, 1955

**No. 59010.**—Krummell Imports v. United States, protest 231680–K/6054 (Chicago).

OLIVER, Chief Judge:   This case relates to merchandise, assessed with duty at the rate of 35 per centum ad valorem as toys, not specially provided for, under paragraph 1513 of the Tariff Act of 1930, as modified by T. D. 52739, supplemented by T. D. 52820, and claimed to be properly dutiable at only 16⅔ per centum ad valorem as manufactures of wood, not specially provided for, under paragraph 412 of the Tariff Act of 1930, as modified by T. D. 52373, supplemented by T. D. 52476.

Five samples of the articles in question were received in evidence (plaintiff's collective exhibit 1).   They were identified by invoice number and invoice description as follows:

| Invoice number | Invoice description |
| --- | --- |
| No.   3 | Cow |
| "      6 | Pig |
| "      8 | Drunk |
| "    12 | Rider on Horse |
| "    21 | Cock |

The parties agreed that the above-enumerated items are representative of "all the merchandise covered by the invoice in this particular case," and that this merchandise is in chief value of wood.

The articles in question, as disclosed by an examination of the samples, consist of a cubical wooden base, approximately 1 to 1¼ inches, on which there is superimposed a figure that meets the invoice description of the item.   The figures are made up of several small pieces of wood, except the "lamp post" (part of item 8) and the tails of the animals (items 3, 6, and 12), which are of spiral wire or feathers (item 21).   The several parts of the figures are strung together with thread that

extends through the block into the base, where it is attached to a spring. The wooden base is hollowed out and has inserted therein a round piece of wood, resembling a button, which, when pressed by the finger, causes the figure on the block to collapse or fall down in a grotesque or amusing manner. When the pressure is released, the figure returns to its original upright form or shape.

Two witnesses testified. Both appeared on behalf of plaintiff.

John D. Krummell, associated with the plaintiff corporation, stated that his business is importing and wholesaling of foreign merchandise, particularly foreign gift articles; that for the past 5 years he has imported approximately 35,000 articles like those the subject of the present controversy; and that they were sold "primarily" to gift shops, "194 of them," throughout the country. The witness testified that he personally sold this merchandise "in the Chicago area, the Milwaukee area, Madison area, and in the resort area of Michigan," and that all of his sales were made to gift shops or to gift departments of larger stores, except the "Boston Store of Milwaukee," where the merchandise was sold to its toy department. He stated further that he saw the articles in question displayed in the gift department of stores where they were being sold to retail customers, "college girls who wanted them for knick-knacks." Asked concerning his personal observation of the use of this merchandise, the witness replied, "I have sold or given these to a number of friends and acquaintances," all of whom used the various items on knickknack shelves for display, except an executive vice president who kept them on his desk "for his amusement, and also to amuse his guests or business callers while he had telephone calls." With respect to the use of the articles by children, the witness stated he gave "three figurines" to small children who ignored them at first, but within a week had broken them. He referred, also, to an item called "the Dachshund" that he gave to a child who "the minute he got hold of it he pulled an ear off of it."

Plaintiff's second witness stated that she is the owner of a gift shop whose business, which includes the merchandise in question, is to sell "items that are suitable for gifts, either as bridge prizes or party favors, or hostess gifts; anything that is in the lower price range that you would be proud to give somebody as a gift for any occasion." Referring to her sales of these articles, she testified as follows:

I have sold almost 47 dozen individually. In addition to that, I have sold 400 to the American Dairy Association. They were cows which they wanted to use as favors at some convention.

The witness' knowledge of the use of the items in question is based on her experience in the sale of the merchandise to various customers, all of whom have been adults. In this connection, she stated that they are useful for collector's items and as amusing gifts for people who are hospitalized.

The samples before us, collective exhibit 1, *supra*, lend support to plaintiff's uncontradicted testimony that the articles under consideration are not toys. Samples are potent witnesses. (*Marshall Field & Co.* v. *United States*, 20 C. C. P. A. (Customs) 225, T. D. 46037.) The items in question are attractively painted and highly finished, giving them the general appearance of articles for display or decorative purposes. They are so fragile and of such light construction that they could not withstand being played with to any extent by children. The wooden button is concealed in the base and so fitted that there is no evidence of it when the article is in position on a shelf or level surface. The effect of this arrangement is to make the amusing feature, in which the figure collapses under finger pressure applied to the wooden button, subordinate to the predominant characteristics dedicating these articles to their primary use as ornaments.

It should be noted that a "toy" for tariff purposes is defined in paragraph 1513 of the Tariff Act of 1930 as "an article *chiefly used for the amusement of children,* whether or not also suitable for physical exercise or for mental development." [Italics added.] It follows therefrom that merely because an article amuses or gives pleasure to the user does not *ipso facto* establish for the merchandise a tariff classification as a toy. Even adults can be amused, as disclosed by plaintiff's uncontradicted testimony concerning the articles in question.

On the basis of the present record, plaintiff has established, *prima facie* at least, that the various items in question are not toys in the tariff sense of the term (paragraph 1513, *supra*), as classified by the collector. In *J. E. Bernard & Company, Inc.* v. *United States,* 27 Cust. Ct. 291, Abstract 55793, which involved celluloid reindeer of various sizes that had been classified as toys and claimed to be dutiable as articles in chief value of compounds of cellulose, we said:

The uncontradicted testimony of a single witness is sufficient to throw the burden on the Government of showing that the chief use of this merchandise was not as stated by the witness, but to amuse children. *Nadel & Schimmel* v. *United States,* 61 Treas. Dec. 927, T. D. 45629. In the case at bar, plaintiff's witness stated a use for this merchandise other than for the amusement of children. The testimony shows that the chief use of the merchandise is for a decorative effect. This proof has not been rebutted nor contradicted by the defendant in any way and indicates *prima facie* that it is chiefly used for the purpose stated by the witness. In addition, an examination of the sample indicates that it is suitable for such use. We therefore hold that the plaintiff has made out a *prima facie* uncontradicted case showing that these celluloid reindeer are not toys. * * *

In like manner, plaintiff, in this case, has overcome the presumption of correctness attaching to the collector's classification of the merchandise in question, and the Government has offered no evidence to support the decision of the collector.

Since it has been agreed that the articles in question are composed in chief value of wood, they are, therefore, properly classifiable as manufactures of wood, not specially provided for, under paragraph 412, as amended, *supra*, and dutiable thereunder at the rate of 16⅔ per centum ad valorem, as claimed by plaintiff.

For the reasons hereinabove set forth, the protest is sustained, and the decision of the collector is reversed. Judgment will be rendered accordingly.