(C.D. 4136)

Morris Friedman & Co. v. United States

United States Customs Court, First Division

(Decided December 1, 1970)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Robert Blanc*, trial attorney), for the defendant.

Before Watson, Maletz, and Re, Judges

Maletz, Judge: This case involves collapsible wooden animal figures that were imported from Italy through the port of Philadelphia in 1966. The government classified them under item 737.40 of the tariff schedules as toy figures of animate objects and assessed duty at the rate of 35 percent. Plaintiff's claim is that the imports are not toys and are properly classifiable under item 207.00 as articles of wood, dutiable at only 16⅔ percent. We overrule the claim.

The pertinent portions of the tariff schedules are as follows:

Classified under:

Schedule 7, Part 5, Subpart E:

Subpart E headnotes:

> \*   \*   \*   \*   \*   \*   \*
>
> 2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.
>
> \*   \*   \*   \*   \*   \*   \*
>
> Toy figures of animate objects (except dolls):
> > Not having a spring mechanism:
> > > \*   \*   \*   \*   \*   \*   \*
> > > Not stuffed:
> > > > \*   \*   \*   \*   \*   \*   \*

737.40       Other _____ 35% ad val.

Claimed under:

Schedule 2, Part 1, Subpart F:

> \*   \*   \*   \*   \*   \*   \*   \*

207.00    Articles not specially provided for, of
          wood _____    16⅔% ad val.

The imported articles consist of colorful animated miniature figures representing humorous renditions of various animals (such as cats, dogs and elephants), each of which is mounted on a cylindrical wooden base. The figures are made up of several small pieces of wood that are decorated with bits of leather, fur and fabric representing ears, noses, tails, etc. The several parts of the figures are strung together with thread that extends through the block into the base where it is attached to a spring. The wooden base is hollowed out and has inserted therein a round piece of wood, resembling a button, which, when pressed by the finger, causes the different parts of the figure on the block to collapse, fall down or move in a grotesque and amusing manner. When the pressure is released, the figure returns to its original upright form or shape.

One witness—the president of plaintiff company—testified at trial. His testimony was to the effect that his company sells almost exclusively to gift shops, novelty stores and dress shops, but not to toy stores; that he has seen the imported figures used frequently in the various States throughout the country; and that they "are primarily used on what-not shelves, or nicknack shelves, or bookcases" as an ornamentation. He further testified that the importation has "an added novelty effect when you push the button and it collapses"; and that the distinction between a collapsible and noncollapsible figure is this added novelty effect. Many of the importations, he continued, are sold as "executive pacifiers" (i.e., something for an executive to doodle or fidget with in the office) ; others are sold to organizations (e.g., colleges or political parties) for use as souvenirs or mascots; and still others are supplied to patients in hospitals where they are used as a form of "therapeutic relaxation." He stated that the imported figures are capable of entertaining when they are picked up and fidgeted with, and in this way provide a "momentary diversion." In this connection, he testified, "I don't know how you would play with them, except to fidget with them."

It is of course basic that the government's classification under the toy provision, item 737.40, gives rise to a presumption that the importation is a plaything chiefly used for the amusement of children or adults. To overcome this presumption, plaintiff had the burden of proving that at or immediately prior to the date of importation, the importations in question were not playthings chiefly used for the amusement of children or adults. This burden, the record demonstrates, plaintiff has not met.

In the first place, examination of the samples, without more, clearly shows the correctness of the government's classification. For when

one presses the button on the bottom of the imported article at various points and applies varying amounts of pressure, the different parts of the animal figure on the block are caused to collapse, fall down or move in a grotesque and amusing manner. Thus, it appears apparent that the central objective of the imported article is as a plaything for amusement. This is in harmony with the testimony of plaintiff's witness that the articles in issue were different from other wooden figures in that the added feature of collapsibility gave them a novelty advantage. Manifestly, if the chief use of the imported figures was for ornamental or decorative purposes, it would scarcely be necessary that they be collapsible.

Added to this is the testimony of plaintiff's witness that many of the imported figures were sold as executive pacifiers, while some were used in hospitals for therapeutic relaxation. Both of these uses would meet the requirement for classification as toys—i.e., playthings for amusement. As pointed out in *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, 39–40, C.D. 3601 (1967) :

> * * * Congress has broadened the toy provision to include articles that may be described as essentially playthings for adults. Apropos of this is the following observation of Mr. Russell N. Shewmaker, Assistant General Counsel to the United States Tariff Commission, made during a hearing conducted by the Tariff Commission concerning the revised scope of the toy provision in the new schedules (1960 Tariff Classification Study, Explanatory and Background Materials, schedule 7, page 682) :
> There is also another factor which I think is important here as we work with this provision. There has been in recent years a growth in the leisure time activities of adults. The adults are finding more and more time to play and to amuse themselves with various pursuits and, as Mr. Lerch said, they may be acting like a child sometimes when they are doing it, but nevertheless they are being amused. We were trying to help the tariff to go with the age.

Nor is it without significance (1) that the boxes in which some of the animal figures were imported are labeled "Therapeutic Siltoys" and depict a hand manipulating the action button at the figure's base; and (2) that a caption on the package reads "Diverte Tutti. . !" which translated means "amusement for all" or "diversion for all." This manner of merchandising—while not determinative—is some indication that the importation was designed and sold as a plaything for amusement.

In concluding that the imported articles before us were correctly classified as toys, we are quite mindful of *Krummell Imports* v. *United States*, 34 Cust. Ct. 354, Abstract 59010 (1955), where collapsible wooden figures, very similar to the ones before us here, were held to be erroneously classified as toys under the Tariff Act of 1930. The

court reached this result for the reasons, among others, that the figures were too fragile for use by children and that they could be amusing to adults. However, unlike the 1930 tariff act which limited "toys" to articles chiefly used for the amusement of *children*, the statutory provisions with which we are concerned in the present case—i.e., the tariff schedules—have, as we have seen, broadened the definition of toys to include articles chiefly used for the amusement of *adults* as well as children.

The protest is overruled. Judgment will be entered to that effect.