(C. D. 1821)

HUDSON SHIPPING CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 15, 1956)

*Sharretts, Paley & Carter* (*Jerome Fisch* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil*, trial attorney), for the defendant.

WILSON, Judge: The merchandise in the case at bar, invoiced as "carved wood sconces with mirror" and as "carved wood sconces w/oval mirrors," was classified for duty under paragraph 230 (b) of the Tariff Act of 1930 at the rate of 50 per centum ad valorem as mirrors. Plaintiff claims these articles are properly classifiable under paragraph 412 of the said act, as amended by the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 16⅔ per centum ad valorem as manufactures in chief value of wood.

The pertinent parts of the paragraphs under the tariff act here in question are as follows:

Paragraph 230 (b) of the Tariff Act of 1930:

Glass mirrors * * * not specially provided for, not exceeding in size one hundred and forty-four square inches, with or without frames or cases, 50 per centum ad valorem.

Paragraph 412 of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, T. D. 51802:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

  *  *  *  *  *  *  *

Picture and mirror frames; * * * 16⅔% ad val.

It was stipulated by counsel for the respective parties that the articles in question are in chief value of wood (R. 2). A photograph illustrating the sconces in question, which was identified as a correct representation of the imported articles, was received in evidence as plaintiff's illustrative exhibit 1 (R. 5). The illustration apparently represents two highly decorated, carved, wooden articles, with a glass insert in the center, each item represented as being 38 inches in length. The item here in question is described as "Three-Candle Sconce, Hand-Carved and Gilded, With Mirror Inset."

Plaintiff's sole witness was the president of Interior's Import Co., Inc., the ultimate consignee of the merchandise, which firm was engaged in the importation of wall fixtures, which it sold at wholesale throughout the country. He testified that he had designed the particular sconce here in question (item W-132) and that the involved merchandise was manufactured in Italy under his supervision in a factory owned by his company. He stated that the items in question are sold usually in pairs to department stores and decorators, generally to be placed on either side of a mantelpiece; that he had seen them used in such fashion in stores and homes; that these sconces are wired for use with small electric bulbs, or sometimes are used with candles, when less light is required; that, when in use, these sconces are placed about 7 feet high for equal distribution of light throughout the room (R. 8–9).

Plaintiff's witness further testified that the glass insert, as indicated in plaintiff's illustrative exhibit 1, was purely for decorative purposes and that such glass mirror measures, at the most, 4 by 6 inches. He explained the reason for the insertion of the glass piece as follows:

A. Since it is rather an elegant piece reminiscent of the Adams style, English Eighth Century style, I thought a little bit of shimmer, a bit of mirror would give it a little shimmer, give the item a little bit more elegance. (R. 11–12.)

Describing the makeup of these sconces, other than the glass insert, the witness stated that the balance of the sconce is comprised of wood and wrought iron; that the wood is glued or screwed to the wrought-iron frame, which also supports the two arms for the candles or electric bulbs to be installed, the top of the sconce (plaintiff's illustrative exhibit 1) being marble. He further stated that all of the wood, including the frame around the mirror, the arrowhead, and the sockets for the candles, is hand-carved and decorated with gold leaf, which latter process involves special finishing, also by hand (R. 12).

Plaintiff's witness further testified that the mirror insert in these sconces is made of cheap scrap glass, which gives wavy reflections, and, thus, is poor in reflective qualities; that the mirror is not used as is good looking glass, but merely to give the sconce the effect of being older than it is, so as to lend the appearance of an imitation antique. He stated that these sconces have to be placed high enough on the wall so as not to interfere with people walking about, inasmuch as the arms project 10 or 12 inches from the wall, and that they are always used above the average human's height; further, that, in his experience, he had never seen anyone attempt to get a reflection from the mirror in the sconce (R. 18–21).

On cross-examination, plaintiff's witness testified that his firm had imported sconces, without the mirror insert, but that they were not similar in design (R. 25). He stated that the glass inserts are just pieces of glass which reflect the light, but that they are not used as a "mirror," although made of the same material from which glaziers make mirror frames. In the opinion of the witness, the glass insert is not a "mirror." The witness, however, defined a mirror as "a piece of glass which is processed in various ways, they spray it with silver in the back and it reflects the image," and stated that "that is what the insert in Plaintiff's Exhibit #1 does" (R. 30–31). He testified, however, that the mirror insert is too small to give a proper reflection. The witness further testified that, when these sconces are wired with electric-light bulbs, the bulbs are only about three-quarters of an inch high, reflecting very little light, and that they are not of sufficient size to reach the mirror height.

The defendant's only witness was the appraiser of the merchandise in question. He testified that the imported sconces had a "mirrored glass" in each, of fairly good quality, and that they would reflect

anything which would appear in the mirror; that, when he looked in the mirror, he could see his image and that there was no apparent distortion in the glass. The witness admitted, however, that, in examining the imported merchandise, he did not place a sconce (plaintiff's illustrative exhibit 1) on the wall, about 6 feet high, and then look at himself in the mirror insert, but stated that it was his practice generally "to look into mirrors when classifying them." He then stated that "the item was fairly expensive for sconces and I could not realize why the people put a mirror in it." (R. 37.)

On cross-examination, defendant's witness agreed that the mirror insert was a "small" mirror and that the entire item imported was about 38 inches in height. He further stated that he had seen articles, such as plaintiff's illustrative exhibit 1, imported with larger mirrors, in various sizes.

The issue in the case at bar is whether the sconces here imported are dutiable under paragraph 230 (b) of the Tariff Act of 1930 as "glass mirrors," as classified, or whether they are properly classifiable under paragraph 412 of the same act, as amended, as manufactures in chief value of wood: "Picture and mirror frames."

Webster's New International Dictionary, second edition, unabridged, at page 2241 defines a "sconce" as follows:

2. a A bracket candlestick or group of candlesticks projecting or hanging from a plate or plaque, and usually forming an ornamental object, secured to a wall.

The criterion for classification of an article as a "mirror" has been previously set forth by this and our appellate court. In *United States* v. *Bonwit, Teller & Co. et al.*, 17 C. C. P. A. (Customs) 96, T. D. 43129, the merchandise consisted of small enameled silver powder boxes, containing a mirror in the lid, used by ladies in their dressing rooms and carried by them for use in places outside their homes. The court held the merchandise dutiable as "articles * * * designed to be worn on apparel or carried on or about or attached to the person" under paragraph 1428, Tariff Act of 1922, rather than as "mirrors, not specially provided for," under paragraph 230 of said act. The court there, at page 100, said:

* * * Congress, after using language so definite and specific in paragraph 1428, above quoted, could hardly have intended that articles like these, *the mirrors of which are such insignificant components*, should be classified as mirrors. [Italics ours.]

In the *Bonwit, Teller & Co.* case, *supra*, the vanity cases or powder boxes containing the mirrors were very elaborate and expensive, and the court was of opinion that such mirrors were "comparatively insignificant."

In *Freedman & Slater* v. *United States*, 17 C. C. P. A. (Customs) 104, T. D. 43431, the merchandise was soft leather pouches or bags,

with two or more pockets for holding and carrying toilet articles, each containing, in addition to, a powder puff, a mirror in a frame, permanently fastened therein. The court held the involved articles dutiable as bags or cases in chief value of leather, or as manufactures of leather, not specially provided for, under paragraph 1432, Tariff Act of 1922, rather than as mirrors with frames or cases under paragraph 230 of the same act. The court therein was of opinion that the small mirror attached to the inside of the bag was for convenience and was not the predominant feature of the bag.

In *Louis Greenberg & Son* v. *United States*, 58 Treas. Dec. 431, T. D. 44326, the court held certain shaving sets, consisting of a round metal box, having a mirror prominently set in the outside of the lid, and, on the inside, a small saucer, properly dutiable at 50 per centum ad valorem under the provision in paragraph 230 of the Tariff Act of 1922 for "All mirrors, not specially provided for, not exceeding in size 144 square inches, with or without frames or cases," rather than at 40 per centum ad valorem under paragraph 399 of the said act as articles or wares, not specially provided for, composed wholly or in chief value of metal, "not plated * * * or colored with gold lacquer, * * *."

In so holding, the court, in the *Louis Greenberg & Son* case, *supra*, after citing, *inter alia*, the *Bonwit, Teller & Co.* and the *Freedman & Slater* cases, *supra*, stated, page 434:

From carefully studying the foregoing authorities and many others it is evident that the criterion for classification in all these mirror cases is whether or not the mirror is the predominant feature in the article. In the case at bar the merchandise consists of a mirror prominently set on the outside of a metal box and a small saucer set in the inside of the box. It is common knowledge that a man in shaving, using one of these articles and having the modern tube of shaving cream and a brush, could very well dispense with the saucer; but he could not shave without the mirror.

It seems to us from an examination of the exhibit itself that the mirror predominates. It might be possible to place a small piece of soap in the saucer and inclose it by putting on the lid or top; but there is not room in the case for a shaving brush which would have to be separately carried.

Then again, the mirror could be used on a bureau or dresser without any regard to the interior of the box, which would ordinarily be dispensed with by the user.

The pertinent language of paragraph 230 of the Tariff Act of 1922, respecting the classification of glass "mirrors," was reenacted, without change, in the Tariff Act of 1930 (paragraph 230 (b)). Accordingly, the criterion set forth in the *Louis Greenberg & Son* case, *supra*, and in the appellate court cases, heretofore cited, is determinative of the classification of the merchandise here involved.

In the case at bar, the illustrative representation of the imported merchandise (plaintiff's illustrative exhibit 1) indicates that the

sconce is 38 inches in length, whereas the mirror part of the article is stated to be not more than 4 inches by 6 inches in size, the testimony of the examiner of the merchandise being in agreement that the mirror portion is a "small" mirror. The testimony establishes that the wood in the sconce, including the frame, is elaborately hand-carved and decorated with gold leaf, which latter process involved special finishing by hand, the whole article being a representation of an antique sconce. The examiner of the merchandise agreed that the item in question was "fairly expensive" for sconces. So far as we are able to determine, the record indicates that the basis of the classification of the merchandise at bar as "mirrors" is that the mirror portion therein reflects an image. In this connection, however, the testimony establishes that the mirror part of the imported sconces is made of cheap scrap glass and has poor reflective qualities. Other than adding in a small degree to the elegance of the sconce itself, the glass insert apparently plays no part in the intended use of the article. As a matter fact, the testimony establishes that these sconces are placed about 7 feet high on the wall for equal distribution of the light throughout the room, and it would appear that the mirror portion could hardly serve the use for which mirrors are ordinarily employed. All of the above factors lend support to the conclusion that the mirror insert is not the predominant feature of the imported sconces. In our opinion, the record in this case establishes that the imported articles are not classifiable as glass "mirrors." Accordingly, we hold the involved sconces, in view of the controlling test for classification of merchandise as glass "mirrors," as set forth in the above-cited cases, properly dutiable under paragraph 412 of the Tariff Act of 1930, as amended, as "Manufactures of wood * * *: Picture and mirror frames" at the rate of 16⅔ per centum ad valorem, as claimed. The protests in this case are sustained. Judgment will be entered accordingly.