**No. 67094.**—Engine Imports, Inc., et al. *v.* United States, protests 60/25150, etc. (San Diego).

OLIVER, Chief Judge: Plaintiff, an importer and distributor of marine and automobile accessories, imported certain so-called mirror aerials, consisting of cable and connectors, and circular mirror mounted on metal frame with supporting bracket. The collector regarded these mirror aerials as being composed of two tariff entities. Accordingly, the cable and connectors were classified as parts of radios under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, and assessed with duty at the rate of 12½ per centum ad valorem. The mirror, with its metal frame and bracket fitted thereto, was assessed with duty at the rate of 35 per centum ad valorem under the provision in paragraph 230(b) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, for glass mirrors, not specially provided for, not exceeding in size 144 square inches, with or without frames or cases.

Importer does not dispute the classification of the cable and connectors as parts of radios. Its protests are directed against the classification of the mirror in the frame and with the bracket. In connection therewith, it is claimed, either, that the mirror should be classified under said modified paragraph 230(b), as assessed by the collector, with the metal frame and fittings attached thereto, separately classifiable as parts of radios under paragraph 353, as modified, with a duty assessment at the rate of 12½ per centum ad valorem; or, as stated in counsel's brief, that "the mirror is not the predominant feature in this physical unit," and that, therefore, the unit is dutiable at the rate of 12½ per centum ad valorem under paragraph 353, as modified, as parts of radios.

The president of the plaintiff corporation was the sole witness who appeared herein. He stated that these mirror aerials are used on automobiles where they serve a twofold purpose, i.e., as a rearview mirror and as part of the antenna for the radio. As representative of the imported merchandise, the witness identified a sample of the invoice item described as "Delswift Mirror-Aerials MkII" that he characterized as a "radio antenna which has been so designed to incorporate a rear-view mirror." (R. 13.) From an examination of the said sample (plaintiff's collective exhibit 1), it appears that the complete imported unit consists of a shielded lead-in cable, approximately 5½ feet long. To one end thereof, is fitted an antenna pin plug and, to the other end, is secured an insulated metal connector. The circular mirror is approximately 4 inches in diameter, mounted on a chrome-plated frame. Attached to

the frame is a specially made metal bracket or arm about 4 inches long, ending in the center of a "black collar" that is permanently affixed to the bracket and which serves as an insulator between the front fender of the automobile, on which the mirror is installed, and the aerial. Under the base of the collar or insulator, is a threaded, metal fitting, designed to receive the connector on the cable that extends to the radio of the automobile, where, by means of the pin plug, it is connected.

It appears from the witness' testimony that the rearview mirror is installed "by drilling a hole in the fender, and that must be at least 18 inches from the windshield, and screwed on in the normal way like any mirror or antenna" (R. 16–17) and that it must be placed "in such a position where it is not blanked off from a radio point of view by the top of the automobile." (R. 16.)

The witness identified a matching wing mirror (plaintiffs' illustrative exhibit 2) which he described as "an additional rearview mirror" that is "installed to (a) provide additional rear view, and (b) to balance the appearance of the automobile." (R. 18–19.) In size, shape, and general appearance, the wing mirror (exhibit 2, *supra*) is identical with the mirror in question (part of collective exhibit 1, *supra*). The difference between the two mirrors is in the fittings attached to the supporting bracket. The mirror involved herein is equipped with an insulator and threaded fitting that relate to the radio aspect of the article under consideration, whereas the wing mirror has an ordinary bolt and screw for its attachment to the automobile fender.

On the basis of the present record, as hereinabove outlined, we find that the merchandise in dispute is basically and primarily a rearview mirror. The metal mirror frame, coupled with the bracket, insulator, and special threaded fitting, imparts to the article in question an incidental use as part of a radio antenna. Such use is a temporary or intermittent use, since the unit is so employed only when the radio in the automobile on which the rearview mirror is installed is in operation. That the component material of chief value in the article is metal, as conceded by the parties, is not controlling of the issue. The important fact is that the mirror is the predominant feature, which, under the line of cases cited by plaintiffs, fixes classification of the present merchandise under paragraph 230(b), as modified, *supra*, as assessed by the collector. *United States* v. *Bonwit, Teller & Co. et al.*, 17 C.C.P.A. (Customs) 96, T.D. 43429; *Freedman & Slater* v. *United States*, 17 C.C.P.A. (Customs) 104, T.D. 43431; *L. Bamberger & Co.* v. *United States*, 59 Treas. Dec. 59, T.D. 44501; *Hudson Shipping Co., Inc.* v. *United States*, 37 Cust. Ct. 187, C.D. 1821.

Giving further consideration to the present merchandise in a light most favorable to plaintiffs' position, it might be said that the unit in question consists of a mirror, in a frame or case, and parts of radios and that it has substantial commercial use for both purposes without being dedicated to either use. Under such circumstances, the article has equal application to two tariff enumerations, i.e., as a glass mirror with a frame or case, provided for under paragraph 230(b), as modified, as assessed by the collector, and as parts of radios under said modified paragraph 353, as claimed. Consequently, the provision for glass mirrors in modified paragraph 230(b), carrying the higher rate of duty and invoked herein by the collector will prevail under the statutory language of paragraph 1559, as amended by T.D. 53599, which provides that "If two or more enumerations shall be equally applicable to any article, it shall be subject to duty at the highest rate prescribed for any such enumeration." *Colibri Lighters (U.S.A.) Inc.* v. *United States* (Suit 5018), 47 C.C.P.A. (Customs) 106, C.A.D. 739.

Our approach to the questions presented herein and our disposition thereof, as heretofore discussed, remove from consideration the doctrine of entireties.

For all of the reasons hereinabove set forth, we hold the merchandise, represented by the item described on the invoice with entry 1312 covered by protest 60/25150 as "Mirror-Aerials. Anti-G1." and by the item described on the invoice with entry 1039 covered by protest 60/25151 as "Delswift Mirror-Aerials Mkll," to be properly dutiable at the rate of 35 per centum ad valorem under the provision in paragraph 230(b) of the Tariff Act of 1930, as modified, for glass mirrors, not specially provided for, not exceeding in size 144 square inches, with or without frames or cases, as classified by the collector.

Consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Reference herein has been made only to those cases deemed necessary to support the reasoning followed and the conclusion reached.

The protests are overruled and judgment will be rendered accordingly.