BEFORE THE FIRST DIVISION, NOVEMBER 16, 1951

No. 55996.—Eskil Halle v. United States, protest 150928–K (New York).

OLIVER, Chief Judge: The merchandise in this case consists of certain painted wooden horses and roosters imported from Sweden. They were assessed for duty at 70 per centum ad valorem under paragraph 1513, Tariff Act of 1930, as toys. The importer duly protested the action of the collector claiming the merchandise properly dutiable under paragraph 412 of the same act (as modified by the President's proclamation, T. D. 51898, to supplement the General Agreement on Tariffs and Trade, T. D. 51802) at the rate of 25 per centum ad valorem under the provision for other "Manufactures of wood or bark * * * ."

At the trial, official samples of a wooden horse and of a wooden rooster were received in evidence (plaintiff's exhibits 1 and 2). It is conceded that the articles are in chief value of wood.

One of these articles (plaintiff's exhibit 1) is a painted wooden horse about 5 inches in height. The other (plaintiff's exhibit 2) is a painted wooden rooster about 6 inches in height. Two additional samples of the merchandise, representing larger sizes of the wooden horses imported, were also received in evidence (plaintiff's exhibits 3 and 4). These are about 8¼ inches and 7 inches in height, respectively.

Two witnesses testified on behalf of the plaintiff. The importer of the merchandise testified that he was an importer of all kinds of novelties from Sweden and had imported articles identical with plaintiff's exhibits 1 and 2 since about 1936 or 1937 (R. 4–5). He stated that he personally sold this merchandise to stores "all over the country" and also to jobbers (R. 7). He had never seen the articles in question manufactured. The witness further testified that he had seen similar wooden figures used in the home of a neighbor in New Jersey as ornaments in windows and in other homes in Chicago and Indianapolis on knickknack shelves, and had also seen them at the World's Fair in New York and in stores; that when he saw them in use, they were used as ornaments from Sweden in cupboards with glasses and other items from that country; that he had seen them during the past 2 or 3 years in gift shops in West Hartford, Chicago, and Minneapolis while traveling on business. He stated that he had never seen children playing with wooden horses and roosters similar to plaintiff's exhibits 1, 2, 3, and 4.

On cross-examination, the importer testified that he had seen an article of this type outside the entrance to the Swedish exhibit at the World's Fair in Long Island; that said article was perhaps taller than he was; and that, except for size, he considered it as being similar to the merchandise here in question. He had also seen inside the exhibit articles similar in size to plaintiff's exhibits 1, 2, 3, and 4 and

stated that they were being sold there; that he had also seen them offered for sale in Chicago, West Hartford, and Minneapolis in stores; that in the latter city, he had seen a wooden horse of a size between the 5-inch and the 8-inch size in the home of an acquaintance whom he visited. He could not remember the person's name. He testified that he believed the party he visited in Minneapolis had children, and that his neighbor in New Jersey, where he had also seen such articles, had one child. He had never seen this child play with the wooden horses which he had seen in that home (R. 19). The witness further stated that he could not remember the addresses of the homes in Chicago where he had seen articles similar to plaintiff's exhibits 1, 2, 3, and 4 used, except the address of one place in that city and that this was 25 years ago; that the decorations at that time might have been different but that the articles were of the same general colors and the same kind of wooden horses. He had also seen articles similar to plaintiff's exhibits 1, 2, 3, and 4 about 10 years ago used in the home of a woman who was a teacher who taught Swedish to children.

Upon re-cross-examination, the importer testified that he was familiar with Swedish fairy tales, stories, and books; that while he could not say he was familiar with the Swedish fairy tale "in which the chief character is a horse which comes with thunder and lightning and does good deeds," it sounded familiar to him.

Plaintiff's second witness testified that he operated "a retail stationery and gift shop, novelties; toy store," and had sold merchandise similar to plaintiff's exhibits 1, 2, 3, and 4 since 1945 or 1946. He stated that he sold such articles generally to adults; that he had seen articles like plaintiff's exhibit 1 in the homes of friends in Brooklyn and on "East 25th Street," which were the only places he had seen them; that they were used standing on the mantel place or shelves (R. 23). He had never seen merchandise similar to the rooster (plaintiff's exhibit 2) in use. The witness testified that he sold both toys and novelties and then stated that he "definitely" sold toys to adults (R. 23–24).

The question for determination here is whether these imported wooden horses and roosters are chiefly used for the amusement of children. The Government, in support of the collector's classification, maintains in its brief that the plaintiff has failed to prove that the merchandise at bar was not chiefly used for the amusement of children throughout the United States within the meaning of paragraph 1513 of the Tariff Act of 1930. In the *United States* v. *F. W. Woolworth Co.*, 23 C. C. P. A. (Customs) 98, 100, T. D. 47765, our appellate court stated:

We are not unmindful of the rule that in order to establish "chief use" the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the question of whether "chief use" has been properly established depends upon the issues and the evidence in each case.

We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule.

The testimony in the present case, which has not been controverted by any evidence on the part of the Government, tends to establish that in a large area of the United States the involved articles are chiefly used by adults on shelves and mantels as ornaments and that they are not chiefly used for the amusement of children. Further, the plaintiff testified that he sold these articles to stores all over the country. In *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120, the court stated, page 124:

* * * Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may

be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares.

In *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. 281, T. D. 46077, our appellate court, in holding certain jigsaw puzzles properly dutiable as manufactures of wood under paragraph 412, Tariff Act of 1930, rather than as toys under paragraph 1513 of the said act, stated:

\* \* \* It is entirely within the scope of the court's judicial knowledge how the articles imported here may be used. The samples speak for themselves. \* \* \*

The samples in this case are likewise potent witnesses and we are of opinion that they establish that the wooden figures here in question are not toys.

Counsel for the Government has conceded that the merchandise is in chief value of wood.

On the basis of the record presented, we hold that these wooden horses and roosters are properly dutiable, as claimed, under paragraph 412 of the Tariff Act of 1930, as modified by the President's proclamation, T. D. 51898, to supplement the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 25 per centum ad valorem as "Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, \* \* \*." The protest is sustained and judgment will be rendered accordingly.