(C.D. 2169)

New York Merchandise Co., Inc. v. United States

United States Customs Court, First Division

(Decided April 20, 1960)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest was described in the opening statement of counsel for the plaintiff as "piano benches" and was assessed with duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412, Tariff Act of 1930, as modified, for manufactures of wood, not specially provided for. The protest claim is for duty at the rate of 11½ per centum ad valorem under the provision in the same paragraph, as modified by T.D. 54108, for furniture, wholly or in chief value of wood, other than chairs.

When the protest was called for trial, counsel for the plaintiff made offers to defendant's counsel to stipulate certain facts, but the stipulation actually entered into was—

\* \* \* that the imported merchandise, if it came in today, would be classified as wood furniture under paragraph 412 of the Tariff Act as amended, and assessed with duty at 11½ percent ad valorem.

Defendant's counsel was asked by the court whether the defendant confessed the error in the proceedings, and he replied,

I don't know whether there was any error. We stipulate facts, we don't confess any error.

A sample of the merchandise was offered and received without objection as plaintiff's exhibit 1. It consists of a wooden article, made in the form of what appears to be a piano bench, but of a very small size.

Counsel for the parties requested to be excused from the filing of briefs and elected to submit the case for decision upon the record so made.

It is too well settled to require the citation of authority that a presumption of correctness attends the classification of imported merchandise made by a collector for the purpose of assessing duty under the provisions of the Tariff Act of 1930, and that the burden rests upon the importer under a protest against such classification not only to prove that the classification made by the collector was erroneous, but also that his own contention is correct. Of course, it follows that if the classification made by the collector is admitted by that officer, or by those who represent the same interests, to be wrong, the classification cannot legally be presumed to be correct. *United States* v. *Gandolfi & Co.*, 12 Ct. Cust. Appls. 455, T.D. 40615, and *Smith & Nichols (Inc.)* v. *United States*, 18 C.C.P.A. (Customs) 16, T.D. 43974.

In the case at bar, there is a somewhat peculiar evidentiary situation. Plaintiff has offered no proof and there is no admission on the part of the defendant establishing that the collector's classification was erroneous. Plaintiff evidently relies upon the stipulated fact that if the merchandise had been imported on the day of trial it would have been classified by the collector in accordance with the protest claim, plus whatever facts the court might glean from an inspection of the sample, plaintiff's exhibit 1, as sufficient to discharge its two-fold burden.

It seems to us that the stipulated fact that the collector, on the day of trial, would do something different, by way of classifying the imported merchandise, from what he did at the time he actually classified it, has little, if any, probative force in determining the issues in the case at bar. Conceding that collectors of customs are serious-minded officers and do not lightly vacillate from time to time between one classification and another with respect to the same merchandise, the fact remains that the merchandise at bar was *not* imported on the day of trial, so that the condition upon which it is stipulated he would adopt a classification different from his original classification was not fulfilled.

Of course, we recognize that the actual words of the stipulation could be interpreted to convey the thought that those who joined in it on behalf of the defendant were *tacitly* admitting error in the collector's classification, but this interpretation is barred by the denial of defendant's counsel that the stipulation was intended to admit any error.

We do not consider that the sample, plaintiff's exhibit 1, shows, by what Wigmore terms "autoptic proference," any facts which would establish the incorrectness of the collector's classification and/or the proof of the correctness of the classification claimed by the plaintiff. While it has been very often said that a sample of imported merchandise is a potent witness in a classification case, about all we can say from a physical examination of the exhibit is that it is something in the form of a bench, but whether it could or does serve the purpose or uses of a bench and, hence, could be properly classified as "furniture," is not apparent to us from a mere examination of the sample.

In the recent case of *United States* v. *Quon Quon Company*, 46 C.C.P.A. (Customs) 70, C.A.D. 699, our appellate court was considering the question of the classification of imported merchandise under the provision for "furniture" in paragraph 412, under which plaintiff here claims, and, in determining the matter, the court said, among other things:

> The Government would have us shut our eyes to the evidence as to what the imported articles are used for, apparently only for the reason that the term "baskets" in paragraph 411 provides for baskets *by name*. We have been unable to find in the Government's brief citation of any authority requiring us to do this. While unhesitatingly granting the truth of the contention that "baskets" in the tariff act provides for baskets "eo nomine," this does not help us in the least to decide whether the imported articles *are* baskets. We are not so trusting of our own notions of what things are as to be willing to ignore the purpose for which they were designed and made and the use to which they were actually put. Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act. [Italics quoted.]

> In order to find that the imported articles are classifiable as parts of furniture under paragraph 412, we must determine whether appellee has sustained its burden of proving that the collector's classification as baskets under paragraph 411 was wrong and the claimed classification is correct. *Benjamin Iron & Steel Co.* v. *United States*, 2 Ct. Cust. Appls. 159. The record clearly establishes that the articles at bar are sold and used only as tops of coffee or cocktail tables and are not likely to be used as baskets. * * *

Here, as in the *Quon Quon* case, *supra*, the issue of whether the articles at bar are furniture or not depends upon the use to which they are ordinarily likely to be put. As we have said, it is not ap-

parent from an examination of the exhibit that articles of that size, shape, and general construction are, unquestionably, furniture, and that they are used as such. The use of articles such as those at bar is not a fact of such notoriety that we may say that it is within the general or common knowledge so that we may take judicial notice of it and avoid the necessity for proof as to use.

Consequently, it appears that the stipulation and exhibit offered at the trial are ineffectual as proof dispositive of the issue. However, transmitted with the protest to this court, we find among the official papers a letter or note, signed in the name of one who identifies himself as "Deputy Collector, Liquidating Division," and reading as follows:

To the Liquidator:

Following the receipt of the attached protest, our liquidation has been reviewed as required by Section 515 of the Tariff Act of 1930 and Section 17.3 of the Customs Regulations of 1943.

Following principles of CIE 801/56 Piano Benches dutiable 11½%—412—54108 Other furniture.

Reliquidation is directed in accordance with the decision above.

The foregoing is dated "7/21/58." The protest was received in the collector's office, according to the rubber stamp on the back thereof, on April 29, 1958, so that it appears that the report of the deputy collector was made within the 90-day period during which, under the provisions of section 515 of the Tariff Act of 1930, he may review his decision and modify the same.

Although the letter or note of the deputy collector was not offered in evidence at the trial of the issue, it is, under the principles expressed in *United States* v. *Albers Bros. Milling Co. et al.*, 35 C.C.P.A. (Customs) 119, C.A.D. 380, and *United States* v. *California Milk Producers Association et al.*, 35 id. 126, C.A.D. 382, competent evidence of the character of the merchandise, and, under the principles expressed in *M. Pressner & Co.* v. *United States*, 26 C.C.P.A. (Customs) 186, C.A.D. 16, it was unnecessary to offer it in evidence inasmuch as, being timely and having been transmitted to the court with the protest, it was already a part of the record before the court.

The timely report of the deputy collector describes the merchandise in terms identical with the claim made in the protest. Under these circumstances and on the authority of the cited cases, we hold that the protest claim for duty at the rate of 11½ per centum ad valorem under paragraph 412, as modified, must be sustained, and judgment will issue accordingly.