(C.D. 2291)

Wing On Co.
W. J. Byrnes & Co. } *v.* United States

## United States Customs Court, First Division

(Decided October 16, 1961)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *George R. Tuttle, Jr.*, of counsel) for the plaintiffs.

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon* and *Samuel D. Spector*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar consists of certain articles made of brass, which are in the form and shape of lotus flowers. It was classified under paragraph 1518 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, at the rate of 35 per centum ad valorem as artificial flowers. Plaintiffs claim the merchandise properly dutiable under paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108, at either 13½ per centum or 14 per centum ad valorem, as household utensils in chief value of brass. Alternatively, plaintiffs claim the merchandise should be held dutiable under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, *supra*, at either 20 or 21 per centum ad valorem, as metal articles in chief value of brass, not specially provided for.

The pertinent provisions of the Tariff Act of 1930 herein involved are as follows:

Paragraph 1518(a), as modified by T.D. 53865 and T.D. 53877:

Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Composed wholly or in chief value of other materials (except feathers) and not specially provided for_____35% ad val.

Paragraph 339, as modified by T.D. 54108:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for * * *:

Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

Brass_____14%, 13½% ad val.

Paragraph 397, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Not wholly or in chief value of tin or tin plate:

\*      \*      \*      \*      \*      \*      \*

Other, composed wholly or in chief value of \* \* \* brass \* \* \*_____21%, 20% ad val.

At the trial, the parties herein stipulated that the involved merchandise, represented by plaintiffs' exhibits 1 and 2, is not plated with platinum, gold, or silver and not colored with gold, and not wholly or in chief value of tin or tin plate, and that it is in chief value of brass (R. 6).

There were received in evidence as illustrative of the imported merchandise plaintiffs' exhibits 1 and 2. Plaintiffs' exhibit 1, item 241, is a brass lotus candleholder, somewhat over 18 inches in height. The article consists of a brass base, about 6 inches in diameter, attached to which is a decorative length of brass upon which rests a large brass representation of a lotus flower containing three tiers of petals. At the top of the article, in the center of the "flower" part, is a brass spike for the insertion of a candle. Plaintiffs' exhibit 2, item 312, is also a brass article in the form and shape of a lotus flower. Unlike plaintiffs' exhibit 1, this article does not have a separate base, nor does it rest on a long brass stem. In the center of the article, however, there is a spike for the insertion of a candle. There was also received in evidence a brass lotus candleholder, smaller in size than plaintiffs' exhibit 2, which was stipulated to be in chief value of brass and not plated with platinum, gold, or silver, or not colored with gold, or not wholly or in chief value of tin or tin plate (plaintiffs' illustrative exhibit 3 (R. 10–11)). A candle used and sold with merchandise, such as plaintiffs' illustrative exhibit 3, was received in evidence as plaintiffs' illustrative exhibit 4 (R. 12).

Two witnesses testified on behalf of the plaintiffs. The first of these was Mr. Gabriel Gock, vice president of the importing concern, importer and exporter of giftware and household ware, and also of art goods. He testified that he was familiar with articles, such as plaintiffs' exhibits 1 and 2, and that he had seen them used; that they are used as a candleholder by placing a candle on the spike inside the flowerlike portion at the top of the article (R. 6). The witness stated that he had never seen nor heard of exhibits 1 and 2 being used in any other manner than as candleholders (R. 7). On cross-examination, Mr. Gock agreed that the articles are in the form of a lotus flower, used as table decorations; that they are used with a lighted or unlighted candle; that, when used on a dinner table, they are used with a lighted candle; and that, when used on another table, besides a dinner table, they are used to decorate the home (R. 8). This witness further testified that actual lotus flowers, which he had seen, are not the same in color as plaintiffs' exhibits 1 and 2 (R. 8–9).

Mr. Albert M. Kessler, general manager for about 15 years of the Albert Kessler Co., importer of art goods, giftware, and decorative accessories, as well as wholesale distributor in such commodities, also testified on plaintiffs' behalf. He stated that he has handled the sale of items very similar to plaintiffs' exhibits 1 and 2, although his company had not dealt in an item with a stem as in plaintiffs' exhibit 1. He had also sold an item similar to plaintiffs' exhibit 2, but smaller in size, namely, the item received in evidence as plaintiffs' exhibit 3. Mr. Kessler testified that exhibits 1, 2, and 3 are usually sold with a candle in the "candle stick area of a retail store" (R. 12) ; that candles used with plaintiffs' exhibit 2 are approximately 12½ inches high; and that candles used with plaintiffs' exhibit 1 are from 6 inches to 8 inches in height. He further testified that he had seen plaintiffs' exhibits 1, 2, and 3 used in homes as a centerpiece on a dining-room table, during a dinner party, with a candle for illuminating purposes. This witness stated that he had never seen any flowers in the shape, form, or color of plaintiffs' exhibits 1, 2, and 3.

On cross-examination, Mr. Kessler stated that he had seen flowers used to decorate a dining-room table, usually placed in the center of the table (R. 13–14).

The determination as to the applicabilty of paragraph 1518(a), *supra*, under the provision therein for "artificial or ornamental fruits, vegetables, grains, leaves, flowers, stems, or parts therof," to imported merchandise has been the subject of much litigation by our courts. The defendant in this case directs our attention to the oft-cited case of *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, T.D. 38336. The merchandise there consisted of (1) a spray of artificial leaves on a stem, upon which was set one brown and three blue oblate spheroids composed of straw; (2) a cluster made of black straw wound into the form of berries or grapes and set on a black straw leaf attached to a stem of black straw and metal; and (3) a spray of leaves bearing a rose, all made of black straw, sewed to a woven fabric. All of the articles there involved were held to be properly assessed under paragraph 347 of the Tariff Act of 1913 as artificial flowers and leaves. In so deciding, our appellate court therein, referring to items (2) and (3) above listed, at page 64, stated:

It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem. Nevertheless, both come within the tariff designation of "artificial and ornamental fruits, grains, leaves, flowers, and stems," inasmuch as they are articles which simulate the natural fruit, flower, leaf, or stem in its physical charcteristics and appearance sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits produced not by nature, but by the hand of man, and which at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.

In the case of *Coro, Inc.* v. *United States*, 39 C.C.P.A. (Customs) 154, C.A.D. 478, the involved articles were described as composed of metal and glass, consisting of three layers of metal in trefoil form superimposed one on another in successively smaller diameters, the trefoil portions being black in color with a bright silverlike edging. In the center of the outer face of the brooch, there was a short metal post on which was mounted a piece of glass having facets like those of a round cut diamond. The articles were used for costume jewelry, designed to be attached to dresses, coats, and hats of women as ornaments. In holding the merchandise properly dutiable as jewelry, as claimed by the appellant, the court, in the *Coro* case, *supra*, page 157–158, stated:

> In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

In the recent case of *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676, decided January 22, 1958, the merchandise was described as "Iron Works, Metal fruits w/leaves," consisting of a three-dimensional, realistic representation of a stem, about 6 inches long, attached to which were four short branches, three of the latter containing leaves and the fourth branch having attached an object resembling a small pomegranate, and other merchandise, invoiced as "Iron pictures of 4 season flowers rusty finish with dull black wooden frame." An illustrated sample of the latter disclosed a framed representation of simulated flower stems of roughened wire, from which ran a number of branches bearing leaves and flowers somewhat like large daisies. The merchandise there under consideration was classified under paragraph 1518, *supra*, as "artificial fruits" and "artificial flowers," respectively, and was claimed properly classifiable under paragraph 397 of the act as articles or wares in chief value of base metal. The testimony of appellant's witnesses indicated that "both types of the involved merchandise are hung on walls."

In holding that the involved "iron works" and "iron pictures" were not dutiable as artificial fruits or flowers, respectively, our appellate court, in the *Marshall Field* case, *supra*, page 75, stated:

> * * * In common understanding natural flowers and pictures have little in common as to use or otherwise. One could as logically argue that a picture of a flower is an artificial flower.

And at page 81, the court, in the *Marshall Field* case, *supra*, after commenting on a number of cases, observed:

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

\* \* \* \* \* \* \*

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artifical flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

In our opinion, the reasoning applied in the *Marshall Field* case, *supra*, is applicable with equal force in the case now before us. The record here would appear to indicate that the flower motif in the involved articles is secondary and that, while ornamental and flowerlike, they are designed to be employed for lighting purposes and so used.

Adopting the reasoning followed in the *Coro* case, *supra*, the involved articles "are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted." An artificial flower can, of course, be used to ornament, but it does not follow, in logic, that because a thing can be used to ornament it is necessarily an artificial flower, even though it has some other flowerlike characteristics. *Marshall Field & Co.* case, *supra*. The same observation might be made with equal force, in our opinion, with respect to the articles here involved. Further, the use to which these candleholders are put is not that "to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor." *Marshall Field & Co.* case, *supra*.

Plaintiffs maintain, in the case at bar, that if the court herein should find that the merchandise represented by plaintiffs' exhibits 1 and 2 are not dutiable under paragraph 339 of the tariff act, as modified, as household utensils in chief value of brass, then, in that case, said merchandise is properly classifiable under paragraph 397 of the act, as modified, at the applicable rate as metal articles in chief value of brass, not specially provided for. In this connection, plaintiffs, in

their brief, direct our attention to the holding of the court in the case of *L. Tobert Co., Inc., and American Shipping Co.* v. *United States*, 40 Cust. Ct. 586, Abstract 62036.

In the *Tobert Co.* case, *supra*, the involved merchandise consisted of certain candlesticks with candelabra branches and candelabra, which was classified under paragraph 339 of the Tariff Act of 1930 at the rate of 50 per centum ad valorem as household utensils, plated with silver. Plaintiffs therein claimed the articles properly classifiable under said paragraph 339, as modified, at the rate of 25 per centum ad valorem as household utensils (except illuminating articles), plated with silver, or, alternatively, at the same rate under paragraph 397 of the act, as modified, as articles, not specially provided for, plated with silver on nickel silver or copper, but not in chief value of silver. The court found that it was established by a preponderance of the evidence that the primary use of the involved merchandise in homes, on dinner tables or sideboards, whether or not lighted, was one of decoration or ornamentation "to give an atmosphere of gracious living and, at the same time, to heighten the decorative effect, their use for illumination being incidental." The court therein held that the chief use of the subject merchandise being for decoration or ornamentation, it was, therefore, excluded from the terms of paragraph 339, for the reason that the provision for household utensils in that paragraph is confined to such articles as are chiefly used for utilitarian purposes, and found the involved merchandise relegated to paragraph 397 of the act and classifiable thereunder as articles, not specially provided for, plated with silver on nickel silver or copper, not in chief value of silver, and dutiable at the rate of 25 per centum ad valorem, as claimed.

Plaintiffs, in the case at bar, contend that these brass lotus candleholders are used only as candleholders and that they are properly classifiable under the applicable rate of duty under paragraph 339 of the Tariff Act of 1930, as modified, as household utensils, not plated with platinum, gold, or silver, and in chief value of brass, not specially provided for. In this connection, our attention is directed to the recent case of *S. S. Sarna, Inc.* v. *United States*, 44 Cust. Ct. 444, Abstract 64135. It was established by the record that certain articles, namely, a bottle opener, a candleholder, and a brass bracket, served a utilitarian purpose and were chiefly used either in the maintenance and care of the home, or in the household by the members collectively for their convenience and comfort. They were, accordingly, held to be "household utensils," within the judicial interpretation of that term, as enunciated by the Court of Customs and Patent Appeals in *I. W. Rice & Co.* v. *United States*, 24 C.C.P.A. (Customs) 114, T.D. 48415, and *Pramette Juvenille Furniture Company* v. *United States*, 36 C.C.P.A. (Customs) 61, C.A.D. 398,

The testimony herein shows that the involved articles are used as table decorations, sometimes used on a dinner table with a candle for illuminating purposes, and, at other times, as articles to decorate the homes. The record, however, fails to establish that the chief use of the articles is for utilitarian purposes. Plaintiffs' contention that these candleholders are properly classifiable as "household utensils" is not, therefore, supported by sufficient probative proof to sustain their claim in this regard. In our opinion, the involved articles, like those the subject of determination in the *L. Tobert Co.* case, *supra*, are relegated to classification under paragraph 397 of the tariff act, *supra*.

Accordingly, on the basis of the record here presented, we hold the involved articles properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, under the provision therein for articles or wares not specially provided for, composed wholly or in chief value of brass, at the following applicable rates: The merchandise covered by protest 59/13228 (entry No. 2515) dutiable at 20 per centum ad valorem; and the merchandise covered by protest 59/14628 (entry No. 1749) dutiable at 21 per centum ad valorem.

The protests herein are sustained. Judgment will be entered accordingly.