(C.D. 2535)

NATIONAL SILVER CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 5, 1965)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before WILSON and NICHOLS, Judges; OLIVER, C.J., not participating

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, is described on the invoices as folding wall hangers. It was assessed with duty at 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476, as manufactures in chief value of wood. It is claimed to be dutiable at 10½ per centum ad valorem under said paragraph, as modified by

the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as furniture, in chief value of wood.

Paragraph 412, as modified by T.D. 52373, supplemented by T.D. 52476, provides:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

\*   \*   \*   \*   \*   \*   \*

 Other (except \* \* \*) _____ 16⅔% ad val.

Paragraph 412, as modified by T.D. 54108, provides:

Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:

\*   \*   \*   \*   \*   \*   \*

                             [C]

 Other furniture _____ 10½% ad val.

At the trial, a representative sample of the merchandise in issue, style 0362, was received in evidence as plaintiff's exhibit 1. It was stipulated that it was in chief value of wood. It is a folding article, composed of 12 strips of wood, 12 inches long, 1¼ inches wide, and ⅜ of an inch thick, fastened together so that it opens out into a framework of three squares or diamonds. At the points where the strips are fastened, pegs, about 3½ inches long, protrude. The article contains 10 pegs in all. Four of the strips contain holes for nails at each end.

Oscar Hart, merchandise manager of the plaintiff company, testified that the article is called an Expando Rack and is to be fastened to the wall. The sample is in a provincial finish to fit that decor in a home, but the article is also made in a blond finish to fit into a modern home. According to the witness, its primary use is as a coathanger or a hat hanger in the entry hall of a home. He has seen it used in the place of coatracks or coat trees. A photograph of a coat tree was received in evidence as plaintiff's exhibit 2.

Mr. Hart testified that he had seen these articles used widely in the West, Middle West, and the East, and that, particularly in the East, it is a functional and handy item because of the winter season and inclement weather. The article is found in the entry hall where coats can be hung up to dry rather than being put away damp. It can also be used in the bathroom to hang towels and on the inside of a closet door, although it is rather large and would be cumbersome. However, the merchandise also comes in a smaller size, about half the size of exhibit 1, with slightly smaller pegs. That size is included on the invoice covered by protest No. 63/6694. The witness said that the small size would not replace a coathanger like exhibit 2 but could be used in place of a towel rack.

Mr. Hart stated that this merchandise is sold to furniture stores, furniture departments of major department stores, variety stores,

and discount houses, and that some of his customers sell knickknacks as well as furniture.

Plaintiff claims that these articles are properly classifiable as furniture, on the ground that they are sold primarily to furniture stores and furniture departments of department stores and are used primarily in entry halls, where they serve the purpose of replacing coatracks and coat trees, which are alleged to be recognized articles of furniture. Although plaintiff's own witness stated that the articles could be used in the bathroom, it is claimed that these items are finished like furniture intended for use in an entry hall rather than for use in a bathroom where a waterproof type of finish would be more appropriate. Defendant contends that the article can be used in place of a towel rack as well as for other purposes and that its use within certain limitations for the same purposes as a coat tree does not qualify it as furniture any more than any hook on the wall on which hats or coats may be hung.

The term "furniture" embraces a wide variety of articles used in the home or outside the home for the use, convenience, and comfort of the dweller. Dictionary definitions, Summaries of Tariff Information, and court decisions have included the following within the term: Chairs, stools, tables, writing desks, wardrobes, bureaus, bedsteads, chiffoniers, lounges, sofas, bookcases, washstands, sewing-machine cabinets, sewing-machine treadle stands, rattancore tabletops, pews and pew fronts, whatnot stands, seats with backrests, backrests, sets of parts which, when assembled, may be fastened to walls and used as shelves for books. *Morimura Bros.* v. *United States*, 2 Ct. Cust. appls. 181, T.D. 31941; *St. Francis Xavier Church* v. *United States*, 27 Cust. Ct. 215, C.D. 1373; *Sprouse Reitz & Co.* v. *United States*, 71 Treas. Dec. 551, T.D. 48896; *Necchi Sewing Machine Sales Corp. et al.* v. *United States*, 30 Cust. Ct. 1, C.D. 1489; *Edward S. Zerwekh Company* v. *United States*, 34 Cust. Ct. 346; Abstract 58989; *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699; *Decorative Imports* v. *United States*, 43 Cust. Ct. 31, C.D. 2099; *Shelford, Inc., et al.* v. *United States*, 54 Cust. Ct. 130, C.D. 2520; *Fabry Associates, Inc.* v. *United States*, 45 Cust. Ct. 88, C.D. 2203.

In *St. Francis Xavier Church* v. *United States, supra*, the court held that the term "furniture" was not limited to "movables" and stated (p. 217):

That pews and pew fronts are articles of convenience used to furnish churches is beyond question, and they therefore fall within the general scope of the term "furniture." Furthermore, we are satisfied that the fact that after importation the pews and pew fronts were secured to the floor of the church by means of metal screws did not destroy their character or affect their nature as furniture. * * *

The merchandise in *Fabry Associates, Inc.* v. *United States, supra,* was described by the court as follows (p. 89) :

The items involved consist of sets of parts, imported in knocked-down condition, which, when assembled, may be fastened to walls and used as shelves for books, decorative items, radios, plants, etc. Certain of the shelves are so made that drawers, supplied with the set, may be fitted to the under side. Each set consists of one or more shelves, with or without a drawer, as the case may be, two plastic coated metal brackets, and plugs, screws, etc., for fastening the metal brackets to walls.

Each shelf, with or without drawer, has attached to it, as imported, two fixed hooks and two hinged hooks. These are used to fasten the shelves to the brackets after the latter have been attached to the wall. * * *

Plaintiff claimed that the articles consisted of furniture, designed to be hung on walls, and defendant contended that they were house furnishings rather than furniture. The court held that they were more specifically provided for as furniture than as manufactures of wood, stating (p. 90) :

We think it may be fairly said that the evidence establishes that the articles to which the protest is limited are used for the same purposes as bookcases, book shelves, night and telephone stands, and the stands or shelves used for holding a wide variety of objects, all having legs or portions which rest upon the floor, which are commonly found in homes or offices and which are commonly regarded as furniture. The only difference between those articles and the articles at bar is that the latter are designed to be attached to the wall rather than to rest upon the floor.

The pews, in the *St. Francis Xavier Church* case, were used for a purpose for which articles commonly known as furniture are used, namely, as seats. The articles in the *Fabry Associates, Inc.*, case differed from well-known articles of furniture, such as bookcases and stands, only in being attached to the wall rather than resting on the floor.

The basic assumption of plaintiff here is that "furniture" is a use classification and that if an article is used as something indubitably furniture is used, it is to be classified as such. Plaintiff further assumes that the common clothes tree is an article of furniture and thus controls classification of other wooden articles having like uses. However, in its use, the import still more closely resembles the hooks, pegs, and rods employed in cloakrooms, vestibules, closets, dressing rooms, and bathrooms to hold hats, clothing, towels, etc. We do not think such articles are commonly known as furniture when fixed to walls or adapted to be. They are not commonly removed by a tenant at the termination of a lease or by a vendor on effecting a sale, since their dislodgment would impart some injury to the realty. Furniture, in common semantics, is ordinarily mobile and goes with the occupant, who employs a furniture mover when he, himself, moves. Although some articles of furniture may be hung on walls, being so attached

does not necessarily make a particular item furniture. A clothes tree is mobile and would not be abandoned to the landlord at the termination of a lease. Thus, even if it is furniture, which the Government denies, it does not follow that the imported article is. The latter does not resemble a clothes tree in construction or method of use. It is merely a folding framework with pegs, which has no use until it is attached to a wall or closet door. It must be not just hung but firmly and permanently affixed with deep-driven nails in order to hold garments, towels, or other items. It is not like an article of furniture before being hung and does not become so afterwards. We hold, therefore, that the imported merchandise does not fall within the term "furniture," as commonly understood and as used in the tariff act. The protests are overruled and judgment will be rendered for the defendant.