(C.D. 2619)

FURNITURE IMPORT CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 21, 1966)

*John D. Rode* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Bernard J. Babb* and *Harvey A. Isaacs*, trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of articles of wood, imported from Italy and entered at the port of New York on various dates between September 25, 1959, and April 4, 1960, inclusive. They were assessed with duty at 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476, as manufactures of wood, not specially provided for. They are claimed to be properly dutiable at 10½ per centum ad valorem under said paragraph, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as furniture, other than chairs.

The pertinent provisions of said paragraph 412, as modified, are as follows:

[Par. 412, as modified by T.D. 52373 and T.D. 52476, *supra*.] Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

\*         \*         \*         \*         \*         \*         \*

　　Other (except \* \* \*) _____ 16⅔% ad val.

[Par. 412, as modified by T.D. 54108, *supra*.] Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:

\*         \*         \*         \*         \*         \*         \*

|  | A | B | C |
|---|---|---|---|
| Other furniture_____ | * * * | * * * | 10½% ad val. |

Photographs or a sample of the imported items were received in evidence at the trial as plaintiff's exhibits 1 through 12. The following tabulation gives the protest number, invoice description, and exhibit number of the various items:

| Protest number | Invoice description | Exhibit number |
|---|---|---|
| 61/21806 | 57341 wall brackets (4780) | 1 |
| " | 23031 wall cabinet (4781) | 2 |
| " | 250 plaques | 3 |
| 62/144 | 242 sconces | 4 |
| " | 218 sconces | 5 |
| " | 4137 brackets | 6 |
| " | 236 plaques | 7 |
| 62/4022 | 23033 wall brackets | 8 |
| " | 4192 trays | 9 |
| " | 23099, etc., wooden boxes | 10 |
| 62/6208 | 248 sconces | 11 |
| " | 4921 wall cabinets | 12 |

The Government conceded that the merchandise, represented by exhibits 1, 9, and 12, was properly classifiable as furniture. Exhibit 1 depicts a wall cabinet with two glass doors and two shelves, measuring 31 by 21 by 8 inches. Exhibit 12 depicts a larger wall cabinet with a glass front, one glass door, and two shelves, measuring 46 by 25½ by 7¼ inches. Exhibit 9 is described as a kidney tier stand and has three trays which apparently can be removed. It measures 27½ by 30 by 17½ inches.

Exhibit 2 is called a shelf, but appears to be an open wall cabinet with one shelf. It measures 25 by 16 by 4½ inches. Exhibit 8 is called a shelf cabinet and appears to be a wall cabinet with an open center having two shelves and portions on each side closed by doors. It measures 17 by 19 by 4½ inches.

Exhibit 6 is a decorative wall bracket having a flat shelf, measuring 5½ by 19 by 5¼ inches.

Exhibit 3 is a plaque or wall decoration in the shape of a lyre with leaves and ribbons and a scroll. It measures 15 by 10 inches.

Exhibits 4, 5, 7, and 11 are so-called sconces. Exhibit 4 is a planter sconce having a center candleholder and four branches with candleholders. It measures 24 by 30 by 13 inches. Exhibit 5 resembles a diamond-shaped lamp, highly decorated, with two branches with candleholders. It measures 33 by 12 inches. Exhibit 7 is a very elaborate piece simulating a rosette and ribbons, attached to which are a drum, horns, and guns, and having two branches with decorated cups apparently for candles or electric bulbs. It measures 28 by 11

inches. Exhibit 11 is described as a wheat sconce and has four branches on each side resembling stalks of wheat. It has two branches with candleholders and measures 17 by 10 by 6 inches.

Exhibit 10 is a decorated wooden box with hinged cover, measuring overall 7 by 5 by 2 inches.

Harry Reiter, president of the plaintiff corporation, testified that his firm has been engaged in the business of importing and selling furniture for about 10 years. He himself has also had experience in manufacturing furniture and in importing and selling it for other companies for about 35 years. He has been abroad 15 or 20 times and has visited factories, showrooms, and furniture exhibitions in Sweden, Denmark, France, Italy, Belgium, Spain, and Germany, and in different parts of this country. His firm sells to about 3,000 decorators and furniture stores, including W & J Sloane, New York; Paine Furniture, Boston; Moore Furniture, Miami; Schulz & Behrle in New Jersey.

He identified the exhibits as representing merchandise sold by his firm and designated by the catalog numbers listed above. He added that the wooden boxes, represented by exhibit 10, come in different sizes, shapes, and colors, but all are decorated boxes with hinged tops and are smaller than exhibit 10.

Mr. Reiter said he had purchased all the exhibits in Europe from furniture manufacturers there and that he had also purchased tables, chairs, desks, and other items from said manufacturers. He had imported and sold such items at wholesale throughout the United States for 35 years to furniture stores and interior decorators. He identified the following newspaper advertisements as including some of the items involved herein:

| Exhibit 13 | Washington Post, July 28, 1963. | Advertisement by Sloane-Mayer Co. Item 4137. |
| Exhibit 14 | (Newspaper and date not indicated.) | Advertisement by Schulz & Behrle. Item 4781. |
| Exhibit 15 | Boston Herald, November 1962. | Advertisement by Paine Furniture Co. Item 4781. |
| Exhibit 16 | New York Times, August 11, 1963. | Advertisement by W & J Sloane. Item 248. |

In addition to the items identified, these advertisements depict many other articles, such as chairs, tables, desks, cabinets, brackets, mirrors, wall decorations, and globes. The witness stated that the items were offered to the public as furniture.

Mr. Reiter also testified that, in his experience, he had seen articles, such as sconces, cabinets, candle stands, shelves, and mirrors, offered

for sale as furniture, in the category of furniture. Based on his experience in the furniture business and his observations in the trade, he stated that all the items represented by exhibits 1 through 12 were furniture. He had seen them used in rooms as part of the furniture, some for utilitarian purposes and others for decoration.

According to the witness, exhibits 2 and 8 are used for the purpose of holding knickknacks or bric-a-brac. The wall bracket, exhibit 6, is both utilitarian and decorative. The witness had seen it used near the doorway where keys or a handbag might be laid down and also for holding figurines or knickknacks. He said that the sconces (so-called by him) are used for decorative purposes; that, if they were to be electrified, they would give light, but that the ones here involved are not electrified. Exhibit 4, the planter sconce, is used to hold plants on the wall and is decorative. It is not wired for electricity, but wax candles could be put in. The plaque, exhibit 3, is purely ornamental. Exhibit 10, the box, is used to hold stamps, jewelry, cigarettes, or candy, and is a decorative piece and part of the furniture in the room.

The witness testified that the companies which placed the advertisements (exhibits 13 through 16) offer accessories for the purpose of decoration, as well as furniture. However, in his view:

Furniture, everything that goes in a room, whether you sit on it, or look at it for decoration, is furniture. In other words, I have a globe here. It is decorative. It is part of the furniture in the room.

He considered mirrors, barometers, and oil paintings as furniture and said that anything in a room that is sold by furniture stores is furniture, except rugs and drapes.

The question before the court is whether the nine items as to which no concession has been made by the Government are "furniture," within the meaning of paragraph 412, as modified, *supra*. Since no commercial designation has been claimed, our determination must be based on the common meaning of the term. The common meaning of a general term, such as "furniture," is construed by courts on a case by case basis, setting the limits of the statutory language by a process of inclusion and exclusion. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, 80, C.A.D. 676.

Dictionary definitions and Summaries of Tariff Information have included as "furniture" such items as chairs, tables, beds, cabinets, desks, lounges, sofas, bookcases, bureaus, chiffoniers, and washstands. Webster's New International Dictionary; Summary of Tariff Information, 1929, pages 955, 943; Summaries of Tariff Information, 1948, volume 4, schedule 4, pages 83, 69.

Articles which the customs courts have held to be "furniture" under tariff acts include:

| | |
|---|---|
| Porch chairs | *United States Willow Furniture Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 90, T.D. 40938; *United States* v. *Basket Importing Co. et al.*, 15 Ct. Cust. Appls. 161, T.D. 42220. |
| Collapsible stand and trays | *G. M. Thurnauer Co., Inc.* v. *United States*, 66 Treas. Dec. 1141, Abstract 29562. |
| Camphorwood chests | *Bullocks, Inc.* v. *United States*, 69 Treas. Dec. 1273, Abstract 33987. |
| Whatnot stands | *Sprouse Reitz & Co.* v. *United States*, 71 Treas. Dec. 551, T.D. 48896. |
| Wooden stands | *A. L. Tuska Son & Co., Inc.* v. *United States*, 6 Cust. Ct. 279, C.D. 482. |
| Pews and pew fronts, although secured to the floor after importation | *St. Francis Xavier Church* v. *United States*, 27 Cust. Ct. 215, C.D. 1373. |
| Sewing-machine cabinets | *Necchi Sewing Machine Sales Corp. et al.* v. *United States*, 30 Cust. Ct. 1, C.D. 1489. |
| Sewing-machine treadle stands | *Edward S. Zerwekh Company* v. *United States*, 34 Cust. Ct. 346, Abstract 58989. |
| Headboards, not integral parts of beds | *Modernaire Furniture, Inc.* v. *United States*, 39 Cust. Ct. 438, Abstract 61224. |
| Rattancore tabletops | *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699. |
| Seats with backrests | *Decorative Imports* v. *United States*, 43 Cust. Ct. 31, C.D. 2099. |
| Piano bench of very small size | *New York Merchandise Co., Inc.* v. *United States*, 44 Cust. Ct. 144, C.D. 2169. |
| Unassembled sets of shelves to be fastened to walls | *Fabry Associates, Inc.* v. *United States*, 45 Cust. Ct. 88, C.D. 2203. |
| Picnic set consisting of wooden box which became a table and stools | *Canton Son, Inc.* v. *United States*, 48 Cust. Ct. 375, Abstract 66580. |

Potty chairs                    *Morris Friedman* v. *United States*, 50 CCPA 53, C.A.D. 819.

Automobile backrests            *Shelford, Inc.*, *et al.* v. *United States*, 54 Cust. Ct. 130, C.D. 2520 (Appeal 5211 pending).

Gunracks                        *Hurricane Import Co. et al.* v. *United States*, 55 Cust. Ct. 210, C.D. 2577.

Articles which the customs courts have held not to be furniture include:

Screens with panels of cotton   *Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, T.D. 31941.

Baskets, used as shipping or    *Krauss & Co.* v. *United States*, 2 Ct. laundry baskets                 Cust. Appls. 17, T.D. 31574.

Folding rack with pegs for hang- *National Silver Co.* v. *United States*, ing clothes, etc.               54 Cust. Ct. 209, C.D. 2535.

Counsel for the plaintiff has also furnished the court with a long list of cases in state courts construing the term "furniture" under varying statutes and situations. In those cases, the term was given a broad rather than a restricted meaning. Many of them have no bearing on the tariff provision now under consideration, since that is restricted to furniture in chief value of wood, not specially provided for. That term is further restricted by the special provisions (not under "furniture") in paragraph 412, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, and the Sixth Protocol of Supplementary Concessions to said agreement, T.D. 54108, which cover "trays, bowls, platters, lamp bases, book-ends, and similar household wares * * * wholly or in chief value of mahogany." This indicates that not all household articles are "furniture" for tariff purposes.

In *Morimura Bros.* v. *United States*, *supra*, our court of appeals applied a restricted definition to the word "furniture" in holding that screens with ornamented panels of cotton were not dutiable as "house furniture." The court stated (p. 182):

Giving to words their strict meaning rather than the signification resulting from a careless use of them, screens such as those imported are not house furniture at all, but house furnishings—that is to say, articles designed more for the ornamentation of the house than for the personal use or convenience and comfort of its occupants. The term "furniture" as ordinarily used may mean that with which anything is furnished, supplied, or equipped. House furniture has a restricted signification, however, which does not cover everything with which a house may be furnished, supplied, or equipped. House furniture, in these modern times, has come to denote those articles of house-

hold utility which were formerly made of wood and which are designed for the personal use, convenience, and comfort of the dweller. House furnishings, on the other hand, are the subsidiary adjuncts and appendages of the house, designed for its ornamentation or which are of comparatively minor importance so far as personal use, convenience, and comfort are concerned. Chairs, stools, tables, writing desks, wardrobes, bureaus, bedsteads, and chiffoniers are truly house furniture, and tidies, pillow shams, bed sets, window curtains, and ornamental screens are just as truly house furnishings. * * *

In the Tariff Act of 1930, the term "furniture" is used rather than the "house or cabinet furniture" of previous tariff acts. Consequently, articles used outside the house have been held to be "furniture." *Decorative Imports* v. *United States, supra; Canton Son, Inc.* v. *United States, supra; Shelford, Inc., et al* v. *United States, supra.* The term has also been held to include sets of shelves which are to be attached to walls by brackets. *Fabry Associates, Inc.* v. *United States, supra.*

The court in the *Fabry* case described the articles before it as follows (p. 89) :

The items involved consist of sets of parts, imported in knocked-down condition, which, when assembled, may be fastened to walls and used as shelves for books, decorative items, radios, plants, etc. Certain of the shelves are so made that drawers, supplied with the set, may be fitted to the under side. Each set consists of one or more shelves, with or without a drawer, as the case may be, two plastic coated metal brackets, and plugs, screws, etc., for fastening the metal brackets to walls.

The court stated that they were used for the same purposes as bookcases, book shelves, night and telephone stands, and the stands or shelves used for holding a variety of objects, which have legs or portions which rest on the floor and are commonly regarded as furniture. The court added (p. 90) :

It has been held that the term "furniture" is one of broad signification (*Necchi Sewing Machine Sales Corp.* and *Barian Shipping Co., Inc.* v. *United States*, 30 Cust. Ct. 1, C.D. 1489), and one which is not limited to what might be termed the usual or conventional kind of furniture (*Decorative Imports* v. *United States*, 43 Cust. Ct. 31, C.D. 2099). It embraces articles of utility which are designed for the use, convenience, and comfort of the dweller in a house (*Morimura Bros.* v. *United States*, 2 Ct. Cust. Appls. 181, T.D. 31941) or the occupier of a place of business. "Furnishings," on the other hand, are subsidiary adjuncts and appendages designed for the ornamentation of a dwelling or business place, or which are of comparatively minor importance so far as use, comfort, and convenience are concerned (*Morimura Bros.* v. *United States, supra*). We are satisfied that the articles at bar fall into the category of "furniture," rather than that of "furnishings."

In the instant case, two of the items conceded by the Government to be furniture (exhibits 1 and 12) are wall cabinets. Two of the items not conceded (exhibits 2 and 8) are also wall cabinets, but of a smaller size. The Government claims that they are not "furniture" because they are not substantial enough to support objects of weight, such as books, but are knickknack shelves and entirely ornamental in character. This appears to be a distinction without a significant difference. It is true that exhibits 2 and 8 are smaller and would hold only small objects, but they are otherwise of the same type as exhibits 1 and 12. Since the latter have glass doors, they are no doubt designed and used for holding objects for display as are exhibits 2 and 8. Exhibits 2 and 8, like exhibits 1 and 12, fall within the purview of the *Fabry* case, *supra*, and are classifiable as furniture.

The same holds true of the so-called bracket (exhibit 6). Rather than being a shelf with brackets as were some of the items in the *Fabry* case, *supra*, it is a shelf and bracket combined, and is usable for holding decorative items or other objects.

The plaques and "sconces" (exhibits 3, 4, 5, 7, and 11), however, require more extended consideration. These articles are of substantial size, and, according to the record, are made by furniture manufacturers, and are offered for sale in furniture stores. Whether or not they are also sold in other stores does not appear. In any event, the fact that they are sold in furniture stores does not prove that they are furniture, for the reason among others that such stores also sell accessories. According to the testimony, these articles are purely ornamental. Whether or not the "sconces" could be electrified need not here be considered, since, as imported, they were not. There is no testimony that they were used with candles to give light. The witness stated that the purpose of the planter "sconce" is to hold plants on the wall and that wax candles could be put in. Whether or not this article was actually used to hold real plants or only artificial ones or candles real or simulated does not appear.

Doubtless our predecessors, like ourselves, were aware of the artistic skill often lavished on furniture, and the beauty achieved. But they believed, as do we, that for tariff purposes "furniture" must do more than please the eye and occupy space. The portion we quote from the opinion in the *Morimura* case, *supra*, is a clear indication that the court of appeals, at that time, and under the statute before it, considered that "house furniture" meant articles having utility for the use, convenience, and comfort of the house dweller and not subsidiary articles designed for ornamentation alone. None of the cases since that time have held that articles which are manifestly ornamental only, as distinguished from ones useful to hold ornaments, are furniture.

The closest approach to the contrary is *Modernaire Furniture, Inc.* v. *United States, supra,* which was not cited by either party. The merchandise there consisted of "headboards" which the court described as follows (pp. 438–439) :

\* \* \* The headboards in issue are of a type which is used in connection with box springs and mattresses. Where the box spring and mattress rest on a steel frame or rail, the headboard may be attached thereto by clamps or screws, or it may be nailed to a wooden box spring frame, or it may stand independently just behind the spring and mattress, or it may be wedged between the spring and mattress and the wall. It is clear that the headboard is not necessary to the functioning and use of the box spring and mattress as a bed and that its sole purpose is ornamental. The record indicates that headboards, such as those at bar, are usually or in "the greater portion of times" attached to the beds in conjunction with which they are used. They are, however, not structurally a part of the beds, which are supported on the floor by means of other than the structure of the headboard.

The court held that the articles were accessories to the beds and not component parts, whether considered in a utilitarian or decorative sense. They were, therefore, held dutiable as furniture rather than as parts of furniture. If the statement that the sole purpose of the headboard is ornamental had triggered attention, as it would seem it should have done, to the rules excluding solely ornamental articles from classification as furniture, then perhaps on reflection it would have been seen that a headboard has utilitarian functions. Did none of the learned judges ever read in bed?

Carved wood "sconces" with mirrors, of a similar character to those here, except for the mirrors, were before the court in *Hudson Shipping Co., Inc.* v. *United States,* 37 Cust. Ct. 187, C.D. 1821. They were classified administratively as mirrors under paragraph 230(b) and were claimed to be dutiable under paragraph 412, as modified, as manufactures of wood. The articles were composed of wood and wrought iron, were highly decorated, and could be used with small electric bulbs or candles. They had an overall length of 38 inches, but the mirrors measured only 4 by 6 inches. The court held that the mirrors were not predominant and that, therefore, the merchandise was not classifiable as mirrors. The articles were held dutiable under paragraph 412, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as manufactures of wood: Picture and mirror frames, at 16⅔ per centum ad valorem.[1] No claim was made that

[1] An examination of the court file reveals that the merchandise was imported in 1952 and 1953. The protests claimed that the merchandise was dutiable at 16⅔ per centum ad valorem under paragraph 412, as manufactures of wood. Plaintiff's brief made that claim under paragraph 412, as modified by the General Agreement on Tariffs and Trade, T.D. 51802. Said modification covers various items in chief value of wood, including picture and mirror frames at 16⅔ percent. It contains no provision for "other" manu-

they were classifiable as furniture although the rate of duty on furniture was lower.

If, as defendant says, wall-hung articles cannot be considered "furniture," unless they replace free-standing articles commonly regarded as furniture, the free-standing articles most like the "sconces" are perhaps candlesticks, candleholders, and candelabra. Such articles, when of metal or glass, have been variously classified, depending on proof of chief use. Metal candleholders chiefly used for decoration have been held dutiable under paragraph 397, as articles of metal. *Wing On Co. et al.* v. *United States*, 47 Cust. Ct. 122, C.D. 2291; *L. Tobert Co., Inc., et al.* v. *United States*, 40 Cust. Ct. 586, Abstract 62036. Those which are used chiefly for utilitarian purposes have been classified under paragraph 339 as household utensils. *S. S. Sarna, Inc.* v. *United States*, 44 Cust. Ct. 444, Abstract 64135; *J. W. Hampton, Jr. & Co.* v. *United States*, 67 Treas. Dec. 1195, Abstract 30542; *R. Alexander* v. *United States*, 67 Treas. Dec. 1212, Abstract 30617. In *United States* v. *Bloch & Co.*, 13 Ct. Cust. Appls. 5, T.D. 40847, it was held that glass candlesticks chiefly used for decorative purposes were not classifiable as illuminating articles. In *L. Tobert Co., Inc., et al.* v. *United States*, 41 CCPA 161, C.A.D. 544, it was held that silver-plated candlesticks and candelabra were properly classified by the collector as illuminating articles, household utensils, under paragraph 339. Since candelabra are at least sometimes considered to be "utensils," it does not seem that they could be regarded as "furniture," under paragraph 412, if in chief value of wood.

However, the evidence here does not establish that the features of the exhibits which resemble candle sockets are intended, like candelabra, to hold candles. This is why we refer to certain exhibits as "sconces" in inverted commas.

A number of cases have held that wooden figures used as ornaments, or knickknacks, or planters are dutiable as manufactures of wood. In none of them was any claim made that they were furniture. *Eskil Halle* v. *United States*, 27 Cust. Ct. 348, Abstract 55996; *Krummell Imports* v. *United States*, 34 Cust. Ct. 354, Abstract 59010; *B. Shackman & Co., Inc.* v. *United States*, 46 Cust. Ct. 338, Abstract 65155; *Imported Merchandise Company* v. *United States*, 52 Cust. Ct. 313, Abstract 68437; *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536.

factures of wood. A subsequent modification, T.D. 52373, effective May 30, 1950, T.D. 52476, contained a provision for "other" manufactures of wood, not specially provided for, at 16⅔ percent. At the trial, one witness stated he would call the article a mirror frame. A photograph of the merchandise depicts an article having a decorated top portion, a middle piece consisting of a mirror in a frame, and a bottom decorative portion with two arms with candleholders.

At the hearings before the House Ways and Means Committee and a subcommittee of the Senate Finance Committee before the enactment of the Tariff Act of 1930, witnesses testified that foreign competition was with high-grade furniture and with antiques, genuine and imitation. (Hearings before the Committee on Ways and Means, House of Representatives, 70th Congress, second session, Tariff Readjustment—1929, vol. IV, pp. 2840–2870; Hearings before a subcommittee of the Committee on Finance, United States Senate, 71st Congress, on H.R. 2667, vol. IV, pp. 361–387.) The Summary of Tariff Information, 1929, also refers to imports as largely carved and upholstered pieces and copies of period furniture (pp. 957–958). Nothing in the above refers to articles which are purely ornamental, except to the extent that it may refer to some antiques too decrepit to have a utilitarian function any longer. Nor is there any statement in the Digests of Trade Data issued in connection with the trade agreement with the United Kingdom, T.D. 49753, nor the Summaries of Tariff Information, 1948, which would indicate that purely ornamental articles were intended to be included within the provision for "furniture." [2]

We conclude that the "sconces" and the plaque (exhibits 3, 4, 5, 7, and 11) are not "furniture" within the meaning of that term as used in paragraph 412, as modified, *supra*.

That leaves the decorated wooden boxes represented by exhibit 10. There is no doubt that the exhibit is a box and that it can be used for holding small articles, but does it fall within the provision for "furniture"? Paragraph 412, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, provides specially for "boxes, crates, fruit-picking trays, and similar containers," at 16⅔ per centum ad valorem. In *X-Acto Crescent Products Co., Inc.,* v. *United States,* 27 Cust. Ct. 190, C.D. 1368, it was held that this provision for boxes was not limited to those which were similar to crates and fruit-picking trays, but encompassed all articles which were boxes, unless a more specific and narrower designation or a contrary legislative intent could be shown. "Furniture" is not a narrower designation nor has a contrary legislative intent been shown. Furthermore, while chests are ordinarily considered to be furniture, small boxes, such as those involved herein, are not. On the authority of the case cited, we hold that the boxes before us are properly dutiable at the rate assessed, but under the provision for boxes, in paragraph 412, as modified by the General Agreement on Tariffs and Trade, T.D. 51802.

The protests are sustained as to the merchandise represented by exhibits 1, 2, 6, 8, 9, and 12, and overruled as to all other items.

Judgment will be rendered accordingly.

---

[2] TSUS, schedule 7, part 4, subpart A, headnote 1, defines furniture as including "movable articles of utility, * * *" but nothing is said of articles of decoration.